UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED ROAD LOGISTICS, LLC,

    Plaintiff,

v.

DVM CAR TRANS LLC,

    Defendants.
_____/

Case No. 16-10641

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) [8] AND DENYING PLAINTIFF'S MOTION TO AMEND FIRST AMENDED COMPLAINT TO JOIN UNITED ROAD SERVICES, INC., AS A PLAINTIFF [14]**

This matter is before the Court on Defendant DVM Car Trans, LLC's ("Defendant" or "DVM") motion to dismiss Plaintiff United Road Logistics, LLC's ("Plaintiff" or "URL") first amended complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). (Docket 8.) Plaintiff filed a response [10], Defendant filed a reply [11], and Plaintiff filed another document, without leave, which it identifies as a reply to Defendant's response [13].  On June 27, 2016, Plaintiff filed a motion to amend the first amended complaint to join United Road Services, Inc., ("URS") as a plaintiff. (Dkt. 14.) Defendant filed a response on July 1, 2016, and the Court heard this additional motion at the July 7 hearing on Defendant's motion to dismiss. (Dkt. 18.)

**I.  FACTS**

Plaintiff brings this action seeking to recover $25,631.45 against Defendant for damages to cargo. Plaintiff is a corporation "organized for the purpose . . . of arranging

transportation of vehicles all over the United States." (Am. Compl. ¶ 1.) Defendant is a trucking company that offers services of interstate transportation pursuant to the authority conferred by the U.S. Department of Transportation; it is registered with the Federal Motor Carrier Safety Administration. (Am. Compl. ¶ 2.) On July 20, 2013, Plaintiff and Defendant entered into a written contract for the transportation of vehicles; Defendant's owner Michael Soykhed, signed the contract. (Am. Compl. ¶ 4.)

On August 25, 2014, Plaintiff engaged Defendant's services pursuant to the contract and a Bill of Lading was issued under which Defendant received for transport a newly manufactured 2015 Chevrolet Equinox (the "vehicle"). (Am. Compl. ¶ 8.) Defendant received the vehicle in new condition and undamaged from General Motors [GM] in Spring Hill, Tennessee. (Am. Compl. ¶¶ 8, 10.) While under the control of Defendant, the vehicle was damaged. (Am. Compl. ¶ 11.) The vehicle was delivered to W. Hare and Son, Inc., a dealership in Noblesville, Indiana, where the damage was discovered. (Am. Compl. ¶¶ 8, 12.) "At the time of the delivery, the vehicle had not yet been certified by the manufacturer to enter commerce, and therefore was still subject to the Motor Vehicle Safety Standards." (Am. Compl. ¶ 13.) The manufacturer/shipper GM determined that due to the damage, the vehicle was a total loss. (Am. Compl. ¶ 14.) The manufacturer destroyed the car, resulting in a charge to Plaintiff of $25,631.45. (Am. Compl. ¶ 15.) Plaintiff paid this full claim amount to GM and informed Defendant of the claim, seeking reimbursement.[1] (Am. Compl. ¶ 16.) Plaintiff brings this action pursuant to the Carmack Amendment, 49 U.S.C. § 14706(a)(1),

---

[1] Plaintiff's first amended complaint alleges that the current Plaintiff URL paid the full claim; in the proposed second amended complaint, Plaintiff alleges that proposed plaintiff URS paid the claim. (Am. Compl. 16; Proposed Second Am. Compl. ¶ 12.)

which provides that the carrier is liable to the person entitled to recover under the receipt or bill of lading. (Am. Compl. ¶ 18.) Plaintiff seeks damages from Defendant DVM in the amount of $25,631.45 plus any additional allowable losses and statutory relief. (Am. Compl.)

Following the filing of Defendant's motion to dismiss, Plaintiff seeks to amend its complaint again, this time to add URS, d/b/a United Road and URS Midwest, Inc., as a plaintiff. Plaintiff alleges that URS is the parent company of URL and the two entities are legally separate. (Pl.s' Mot. To Amend 4, 10.) URS is a registered motor carrier with the Department of Transportation. (Proposed Compl. ¶ 2.) URS contracted with General Motors, LLC, to deliver new automobiles to GM dealerships. (Pl.'s Mot. To Amend ¶ 6.) In its motion, Plaintiff argues that URL arranged for Defendant to pick up the vehicle from URS. (P l.'s Mot. To Amend ¶ 8.) URS paid the claim to GM for the vehicle loss. (Proposed Compl. ¶ 12.)

This is Defendant's second motion to dismiss. Defendant withdrew the first motion to dismiss and the Court allowed Plaintiff to file an amended complaint. Defendant again moves to dismiss, contending that under the Carmack Amendment, Plaintiff is a transportation broker without standing to recover damages.

## II. LEGAL STANDARD

Defendant DVM brings this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), alleging the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Sixth Circuit noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains

3

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Ass'n,* 714 F.3d 920, 924-25 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, while the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney*, 714 F.3d at 924 (citing *Iqbal*, 556 U.S. at at 679; quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555 (citation omitted).

### III.  ANALYSIS

As an initial matter, Plaintiff seeks to amend the amended complaint. Fed. R. Civ. P. 15 provides for amendments as a matter of course under certain circumstances, and in all other instances "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 also provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Grounds for denying leave to amend include the futility of the amendment. *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996,

1001 (6th Cir. 2005). Fed. R. Civ. P. 20(a)(1) permits persons to join in an action if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all plaintiffs will arise in the action." Determining whether Plaintiff's proposed amended complaint would be futile hinges on the Carmack Amendment analysis herein.

The Carmack Amendment creates "a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015).

> (1) Motor carriers and freight forwarders.--A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 *are liable to the person entitled to recover under the receipt or bill of lading*. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier. . . . .

49 U.S.C. § 14706(a)(1) (emphasis added). A "carrier" is "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). Further, the Carmack Amendment allows for apportionment of damages between carriers, providing "[t]he carrier issuing . . . the bill of lading . . . is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property . . . ." 49 U.S.C. § 14706(b).

Defendant relies on Fed. R. Civ. P. 17(a)(1) requiring an action to "be prosecuted in the name of the real party in interest" to argue that Plaintiff has neither constitutional nor

5

prudential standing to bring this claim under the Carmack Amendment. Defendant argues that "the person entitled to recover under the receipt or bill of lading" is the owner of the cargo, GM, and not Plaintiff, who merely brokered the transportation and who has alleged only the injury which GM suffered. (Def.'s Mot. To Dismiss ¶ 7, Br. 10.) Plaintiff responds that it is entitled to recover from Defendant the amount paid to GM, who it identifies as "the owner of the property" and that the July 20, 2013 contract between Plaintiff and Defendant attributed the risk between the parties in a manner agreed to by the parties yet did not expressly waive the Carmack Amendment, therefore Plaintiff must pursue its claims through the Interstate Commerce Act. (Pl.'s Resp. 3.)

> In order to establish constitutional standing, a plaintiff must satisfy three elements:
>
> (1) [T]he plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*American Home Mortgage Servicing, Inc. v. Donovan*, 2011 WL 2923978, at *2 (N.D. Texas, July 20, 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Prudential standing requires that

> (1) [A] plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question.

*Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009).


> However, Courts have generally held that a party in interest may assign its legal claims to a third party, typically by contract assigning its full exclusive

> interest in a legal claim to the assignee. The assignee may then bring suit in its own name on behalf of the party in interest.

*American Home Mortg.*, 2011 WL 2923978, at *2. Therefore, prudential standing can be established through an assignor-assignee relationship and thus, an assignee does have standing to bring a Carmack claim.

With respect to constitutional standing, Plaintiff seeks to recover losses that arise directly from the lost vehicle, which is a loss Plaintiff did not suffer, but for which it reimbursed GM. *Exel,* 807 F.3d at 148 ("Absent any showing that Exel itself suffered a loss (directly or in an indemnification contract with [shipper/owner]), Exel lacks standing to pursue a claim in its own right for loss of the pharmaceutical products."). Even if Plaintiff has plead a separate injury in fact which it or URS suffered, Plaintiff has not plead facts from which it may show it has prudential standing to bring a Carmack claim.

The issue is whether Plaintiff is a "carrier" under the amendment or has somehow stepped into the shoes of the shipper/owner who would be entitled to recover against a carrier. "Whether a company is a broker or a carrier/freight forwarder is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper." *Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003) (the court noted that "it is unclear how GES held itself out. It does not seem to be simply a broker, as it apparently undertook responsibility for making sure the equipment got from Tennessee to Texas, and it packed and loaded the equipment onto Swift's truck," and denied "summary judgment on the question of whether the Carmack amendment applies"). As Defendant points out, those cases on which Plaintiff relies to show that it and/or URS acted as a carrier are of a posture in which the court had to

determine whether the broker defendants were acting as brokers or motor carriers in suits brought by the shipper/owners and/or shipper's insurer. *See e.g., Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003); *Land O'Lakes, Inc. v. Superior Serv. Transp. Of Wisconsin, Inc.*, 500 F. Supp. 2d 1150 (E.D. Wisc. 2007); and *Mach Mold Inc. v. Clover Assocs., Inc.*, 383 F. Supp. 2d 1015, 1030 (N.D. Ill. 2005) ("[I]f Clover had been authorized to transport the machine and accepted and legally bound itself to do so, it would not be a broker. . . . More to the point, Clover has provided no evidence to demonstrate that it registered as a broker as required under the ICA [Interstate Commerce Act].").

The case most similar to that at bar is *Exel*, wherein the Sixth Circuit concluded the Carmack Amendment did not provide the plaintiff "as a non-shipper broker, with a direct cause of action," thus the plaintiff could not sue under the Carmack Amendment for breach of its agreement with the defendant carrier, and would have lacked standing anyway where it has not suffered a loss under the agreement. *See id.* at 149. Yet in *Exel*, the court went on to find that the plaintiff was also an assignee of the shipper's claims against the defendant carrier under the bills of lading. "As assignee of those rights, Exel has standing to bring a Carmack claim." *Id.* at 149.

Plaintiff admits in its pleading(s) that United Road Logistics, LLC, "was a corporation, organized for the purpose, *inter alia*, of arranging transportation of vehicles all over the United States, . . . ." (Am. Compl. ¶ 1.) In an attempt to defend against dismissal, Plaintiff alleges more in its Responses than it pleads in either the first amended complaint or the proposed second amended complaint. In the first amended complaint, Plaintiff identifies itself as "arranging transportation of vehicles all over the United States." (Am. Compl. ¶ 1.)

In the proposed second amended complaint, Plaintiff clearly identifies itself as "a broker for the transportation of motor vehicles" and casts the proposed plaintiff United Road Services, Inc., as "a motor carrier under 49 U.S.C. 13102(12) registered with the Department of Transportation pursuant to 49 U.S.C. 13902 and 13905." (Proposed Second Amended Complaint ¶¶ 1,2.) In its response, Plaintiff identifies itself as having acted as a motor carrier because it issued the Bill of Lading, arranged transportation, and insured the delivery of the cargo. (Pl.'s Resp. 3.) Yet in the July 20, 2013 Broker/Contractor Agreement attached to the first amended complaint, Plaintiff URL (as well as the additional proposed Plaintiff URS) is identified as "broker," and Defendant DVM is identified as "carrier." (Broker Contractor Agr., July 20, 2013, Pl.'s Resp., Ex. D, dkt. 10-5; dkt. 7.)

Even ignoring labels and simply considering how Plaintiff "holds itself out to the world" and its "relationship with the shipper" leads to the conclusion that Plaintiff merely arranged for the transportation, "which falls within the definition of a broker, not a motor carrier." *Wallach Trading Co., Inc. v. Team Freight, Inc.*, 2012 WL 1994799, at *2 (E.D. Mo. June 1, 2012). Nothing in the complaint(s) suggests that URL provided or agreed to provide transportation. Nor do the pleadings show an assignment of claim or that the Plaintiff as broker has stepped into the shoes of the shipper. *See generally Propak Logistics, Inc. v. Landstar Ranger, Inc.*, 2012 WL 1068118 (W.D. Ark. 2012); *Exel*, 807 F.3d 140. The amended complaint contains a copy of the bill of lading which was issued, and appears to be signed by Defendant's owner/agent Michael Soykhed (sp). The Bill of Lading identifies the "carrier" as DVM Transport. (Am. Compl. Ex. 2.) Neither the amended complaint nor the second amended complaint contain sufficient factual matter to allow any inference that Plaintiff URL is other than a broker in this matter, and lacks standing to bring the instant

claim.

The remaining issue before the Court is whether Plaintiff's proposed second amended complaint cures this deficiency by adding URS as a plaintiff. As Defendant points out, on neither the face of the complaints nor in the exhibits is there an allegation that Plaintiff(s) owned the damaged cargo, the vehicle. In fact, proposed plaintiff URS's service contract with GM (provided with Plaintiff's reply) states that

> Unless otherwise agreed in writing between Buyer [GM] and Provider [United Road], at no time and in no circumstance shall Provider acquire any interest in the goods handled by Provider in its provision of Services hereunder. Nothwithstanding any other clause to the contrary, Provider agrees to immediately release the goods to Buyer upon demand."

(Pl.'s Reply to Def.'s Resp. Ex. A, dkt. 13.) The Services Special Terms of the Contract provide that

> As between Service Provider and GM, Service Provider will have exclusive care, custody and control of all goods hereunder including motor vehicles and related components from the time delivered to it until delivery to a consignee named by GM in the case of truck haul-away, or until properly loaded and otherwise delivered to the rail carrier in the case of rail shipment. Service Provider assumes full responsibility for any and all loss or damage to said property while in its care, custody or control unless such loss or damage is caused by the acts or omissions of GM, its consignees, agents or employees, rail carriers, or by a force majeure event as that term is defined below in this agreement. . . . .

(*Id.* § 6, dkt. 13.)

Plaintiff argues that proposed plaintiff (URS) looks more like the defendant in *Land O'Lakes, Inc. v. Superior Serv. Transp. Of Wisconsin, Inc.*, 500 F. Supp. 2d 1150 (E.D. Wisc. 2007), in which the court held that the carrier that brokered the transport was acting as a motor carrier for purposes of the Carmack Amendment, yet the *Land O'Lakes* defendant had expressly agreed to transport the goods and agreed to assume interstate

motor carrier liability pursuant to the Carmack Amendment. *Id.* at 1152. As Defendant points out, URS did not own the cargo or otherwise obtain an interest in it, and, unlike *Exel*, there was no assignment of claims by GM to URS. *Exel*, 807 F.3d at 149 (citing *R.E.I. Transport., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693 (7th Cir. 2008) (REI was a "person entitled to recover" under the Carmack Amendment where the shipper/owner had assigned "all rights, title and interest in and claim to any payment from any and all carriers . . ." in exchange for payment by REI to shipper/owner)). Further, the only injury suffered was that to GM- Defendant points out that carrier Defendant DVM would be liable to GM under the Carmack Amendment. The Court finds that Plaintiff has not plead facts from which the Court can infer that either Plaintiff or URS have standing to bring a Carmack claim. For this reason, the Court finds that filing a second amended complaint would be futile.

## IV. CONCLUSION

For the reasons set forth above the Court GRANTS Defendant's motion to dismiss (dkt. 8) and DENIES Plaintiff's motion to amend the first amended complaint (dkt. 14).

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: July 27, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 27, 2016, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager